CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
JUL 2 6 2013
JULIA C. DUDLEY, CLERK
BY: /s/
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JASON S. KARAVIAS, II,<br>    Plaintiff, | Civil Action No. 7:12-cv-00624 |
| v. | MEMORANDUM OPINION |
| COMMONWEALTH OF VA, et al.,<br>    Defendants. | By:  Hon. Jackson L. Kiser<br>       Senior United States District Judge |

    Jason S. Karavias, a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff initially named as defendants the Commonwealth of Virginia, Correctional Officer ("C/O") D. Farmer, and Nurse Whitt, and I previously dismissed claims against Nurse Whitt without prejudice and terminated her as a defendant, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). Plaintiff alleges that C/O Farmer used excessive force, in violation of the Eighth Amendment of the United States Constitution. The Commonwealth of Virginia and C/O Farmer filed a motion for summary judgment; the court entered its Notice, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975); and the court next received a filing from plaintiff that the Clerk docketed as a response in opposition to defendants' motion for summary judgment. Because the case was considered ripe for disposition, I reviewed the record and granted defendants' motion for summary judgment. I noted in the Memorandum Opinion that the document docketed as plaintiff's response in opposition to the summary judgment motion did not contain verified evidence, and thus, I relied on the verified Complaint to oppose the evidence supporting defendants' motion for summary judgment.

    However, the court has now received plaintiff's motion for summary judgment and affidavit, which he allegedly signed on July 11, 2013, and within the time permitted by the

court's Roseboro notice. As a cost-cutting measure in response to the current budgetary environment, the Clerk recently terminated the post office box to which plaintiff sent his motion for summary judgment, and re-routing of the mail resulted in the delay for its delivery to the Clerk's Office. Because plaintiff is entitled to have his motion for summary judgment and affidavit considered in light of the docketing and postal delay, I vacate the prior Memorandum Opinion and Order. Because even with the new evidence plaintiff is not entitled to relief, I grant defendants' and deny plaintiff's motions for summary judgment.

## I.

Defendants present the following facts in support of their motion for summary judgment. On November 14, 2011, C/O Gibson and C/O Buchanan retrieved lunch trays from each inmate in plaintiff's pod at the Red Onion State Prison ("ROSP").[1] To accomplish this task, the officers used a "tray slot box," which is a metal box with an open side placed against a cell door and another side that has a hinged lock to secure items inside.[2] The tray slot box is affixed to the tray slot on a cell door by lowering the tray slot into the box and by sliding the top of the box over the tray slot latch. The tray-slot box then becomes a barrier between the inmate and staff despite the open tray slot on the cell door.

When C/O Gibson put the tray-slot box on plaintiff's door to retrieve plaintiff's lunch tray, plaintiff stuck his hands inside the box. C/O Gibson ordered plaintiff to remove his hands

---

[1] ROSP is considered an "Administrative Long Term Segregation Unit," meaning that most of its inmates, like plaintiff, are kept in their single-bunk cells for approximately twenty-three hours per day. This type of secure housing is designed for the VDOC's most violent or defiant inmates.

[2] Interestingly, only plaintiff describes the tray-slot box as weighing thirty-five pounds. Plaintiff does not explain how he knows how much the box weighs, and Level-S inmates at ROSP are not permitted to walk around the pod with the box to feed other inmates. Plaintiff's knowledge of the box's weight could occur by, for example, lifting or pushing the box off of a cell door.

2

from the box, but plaintiff refused and tried to knock the box of the cell door. C/O Gibson called C/O Farmer for assistance because C/O Farmer was a senior officer who was authorized to carry pepper spray. When C/O Farmer arrived at the cell, he saw plaintiff's arms in the tray slot, trying to push the tray-slot box from the door, saw plaintiff holding what looked like a plastic bag, and heard plaintiff threaten to throw feces on the officers. C/O Farmer tried to reattach the box to the door several times to secure the barrier between the officers and plaintiff's arms. Although plaintiff continued to push the box away from the door, C/O Farmer was ultimately able to lock the tray slot closed after securing the tray-slot box.

Plaintiff merely alleges in the verified Complaint that C/O Farmer repeatedly hit plaintiff's arms and hands with the box, causing broken fingers, bruises, and scrapes. Plaintiff argues that this force was excessive because plaintiff was locked inside a cell, and he requests $30,000 in damages. In his affidavit in support of his motion for summary judgment, plaintiff admits having his hands inside the tray-slot box, but he does not deny trying to dislodge the tray-slot box from the door. Plaintiff denies that a plastic bag of feces existed but, notably, does not aver that he never threatened to throw feces on staff.

## II.

### A.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a

light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23; see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (noting allegations in a verified complaint based on personal knowledge are the equivalent of an opposing affidavit for summary judgment purposes). A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams, 952 F.2d at 823. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

### B.

Plaintiff cannot recover damages against defendants in an official capacity via § 1983. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Accordingly, Farmer, when sued in an official capacity, and the Commonwealth of Virginia are immune from this suit. Id.

### C.

C/O Farmer argues that the excessive force claim asserted against him in an individual capacity is barred by the doctrine of qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity provides immunity from suit rather than a mere defense to liability. Thus, whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first).

Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990); see Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent."); see also Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) (stating clearly established law in the Fourth Circuit refers to decisions of the Supreme Court of the United States, the Court of Appeals for the Fourth Circuit, and the highest court of the state in which the case arose).

A prisoner alleging excessive force must objectively show that a defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986); see Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Therefore, the proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The subjective component encompasses "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Id. at 321 (internal quotation marks, alterations, and citation omitted). The objective element generally requires more than a de minimis use of force. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). Correctional staff must act "in haste, under pressure, and frequently without the luxury of a second chance," and the court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley, 475 U.S. at 320; Hudson, 503 U.S. at 7.

After relying on the verified Complaint and recent affidavit, plaintiff fails to provide specific, admissible facts that demonstrate how C/O Farmer used force maliciously and sadistically to purposely cause harm. Consequently, C/O Farmer is entitled to qualified immunity because the record evinces C/O Farmer's use of force as a good faith effort to maintain or restore discipline.

Plaintiff's argument that the force was excessive because he was locked inside the cell is specious because he fails to offer any evidence to explain why his arms were outside the cell at anytime. Plaintiff's arms did not belong outside of his cell when returning the lunch tray, and his persistent refusal to comply with staff's orders required some type of force to restore discipline and order. C/O Farmer's forceful attempts to hinge the tray slot box on the cell door to keep plaintiff's hands securely away from the officers was a direct consequence of plaintiff's refusal to return his arms inside the cell and hearing plaintiff's threat to throw feces on the officers, regardless to the actual existence of a plastic bag of feces. An inmate's threat to throw feces on

correctional staff undoubtedly causes staff to act in haste and under pressure, and C/O Farmer's decision to quickly and forcefully secure the box is worthy of deference.

Although plaintiff allegedly sustained broken fingers, bruises, and scrapes, these injuries could only have happened if plaintiff refused to return his hands inside the cell door. Plaintiff's allegedly broken fingers and de minimis bruises and scrapes are not commensurate with the disfigurement that could have been caused if the thirty-five pound steel box were repeatedly smashed maliciously and sadistically across plaintiff's hands and arms as plaintiff alleges. Although C/O Farmer could have used pepper spray or direct physical force to compel plaintiff's obedience, C/O Farmer persisted in securing the tray slot box to restore order without a greater risk of injury to plaintiff or staff. Accordingly, plaintiff fails to present evidence that C/O Famer used force maliciously and sadistically, and C/O Farmer is entitled to qualified immunity.

### III.

For the foregoing reasons, I vacate the prior Memorandum Opinion and Order, grant defendants' motion for summary judgment, deny plaintiff's motion for summary judgment, and deny as moot plaintiff's motion to compel.[3]

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

**ENTER**: This 26th day of July, 2013.

*Jackson L. Kiser*
Senior United States District Judge

---

[3] Plaintiff's motion to compel asks me to order non-defendants to provide plaintiff with pen and paper after correctional staff allegedly revoked plaintiff's possession of these items because a woman complained about a letter plaintiff sent her. The record reveals plaintiff has been able to fully reply to defendants' motion and court orders, and the request for pen and paper is moot because this matter is resolved and no response from plaintiff is required.